## Veech et al. v. Deposit Bank of Shelbyville et al.
May 9, 1939.

544

GILBERT & DAVIS for appellant.

KINSOLVING & REASOR for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming in part and reversing in part.

In the early part of the year 1931 depositors and officers of the Bank of Finchville due to depressed business conditions, shrinkage and deflation of values of securities held by the bank and because many of them were considered slow and frozen, decided that it would be inadvisable to attempt to continue operation of the bank. This conclusion led to discussion and negotiations rela-

tive to the Deposit Bank of Shelbyville, Kentucky, taking over and liquidating the Bank of Finchville and apparently the officers and directors of the two banks reached an understanding and agreement. Thereupon, W. A. Dickens, Banking Commissioner of Kentucky, was called and conferred with, and the directors of the Bank of Finchville adopted a resolution to close the bank and place it in the hands of the Banking Commissioner. He immediately entered into an agreement with the directors of the Deposit Bank which omitting signatures, statement of assets and liabilities of the bank, reads as follows:

"Whereas, the assets of the Bank of Finchville, Finchville, Kentucky, have been placed in the hands of the Banking Commissioner for liquidation by the voluntary action of its Board of Directors and:

"Whereas, the Deposit Bank, Shelbyville, Kentucky, desires to purchase the assets of the Bank of Finchville, and liquidate same.

"Now, therefore, W. A. Dickens, Banking Commissioner of the State of Kentucky, party of the first part and the Deposit Bank, Shelbyville, Kentucky, by its Board of Directors, party of the second part entered into the following agreement, towit:

"Party of the first part agrees to and by these writings does turn over to the Deposit Bank, Shelbyville, Kentucky, all the assets of the Bank of Finchville, Finchville, Kentucky, for liquidation including the right to require a double assessment against the stockholders of the Bank of Finchville if same becomes necessary in order to take care of all expenses and loss incurred in completing the liquidation of the Bank of Finchville to save the Deposit Bank, Shelbyville, Kentucky, free from any loss that may arise in connection with the liquidation of the assets of the Bank of Finchville in excess of the Capital, Surplus, Interest and Discount, and Undivided Profit accounts of the Bank of Finchville, under the following term and conditions.

"Party of the second part agrees to handle the liquidation free from any cost or expense other than whatever attorney fees may be necessary and the necessary Court cost and agree to pay the depositors of the Bank of Finchville, on demand, or

in accordance with the terms and conditions as the deposits were received and carried on the books of the Bank of Finchville. To make a set up on their books representing the Capital, Surplus, Undivided Profits and Interest and Discount accounts of the Bank of Finchville, and to this fund, all losses and court cost whatever, Attorney fees may be necessary be chargeable, and when the assets of the Bank of Finchville have been brought to a final liquidation and there still remains any of this fund, then in that event said sum to be refunded to and become the property of the stockholders of the Bank of Finchville. * * *

"It is further agreed that this liquidation shall be completed within three years from the date of this contract, and that due diligence will be used in the collection of the resources of the Bank of Finchville.

"The Directors of the Deposit Bank, Shelbyville, Kentucky, hereby acknowledge receipt of the Assets and Liabilities of the Bank of Finchville as herein stated.

"It is further agreed that the Deposit Bank accepts the following described notes free from any liability as to their final payment against the resources of the Bank of Finchville except adjustment of interest on these notes shall be made. These said notes being included in the Loans & Discounts which are a part of the resources turned over to the Deposit Bank.

"Given under our hand this the 7th day of March, 1931."

      *     *     *     *     *     *

"The above Directors are Directors for the Deposit Bank, Shelbyville, Kentucky, parties of the second part.

"We, the undersigned Directors of the Bank of Finchville, Finchville, Kentucky, have read the above contract and agreement between the State Banking Department and the Directors of the Deposit Bank, Shelbyville, Kentucky, and wish to state that we concur in and heartily approve of this contract and agreement.

"This the 7th day of March, 1931  * * *"

Immediately thereafter the Deposit Bank took over the property and assets of the Bank of Finchville and began liquidation thereof pursuant to the agreement, but because of depressed prices of securities held by the bank and of real estate securing mortgage bonds held by it, the time in which to complete the liquidation as provided in the contract was extended.

On September 26, 1935, G. M. Veech and A. B. Veech, owners of shares of stock in the Bank of Finchville, instituted this action in equity against the Deposit Bank of Shelbyville and J. R. Dorman, then Banking Commissioner of Kentucky, praying that the Deposit Bank be required to settle the accounts in liquidation of the Bank of Finchville and be required to pay over to plaintiffs the proportionate amount due them and for a construction of the contract between the banking commissioner and the Deposit Bank above set out.

Without detailing at length the allegations of the petition, answer, counterclaim, cross-petition and subsequent pleadings, the issues made and which are to be determined by this appeal are, whether the Deposit Bank was entitled to receive and retain interest accruing on notes, bonds, etc., taken over after the date of the contract and whether it was entitled to interest on money advanced to pay depositors under the terms of the contract and also whether certain attorneys' fees, costs, audits, etc., as hereinafter referred to are proper charges against the Bank of Finchville under the terms of the quoted contract.

After considerable proof had been taken it was adjudged by the court in substance that under the contract the Deposit Bank purchased the assets of the Bank of Finchville, with the exception of those purchased without recourse, for the purpose of liquidation only and that all interest collected thereon was the property of the Bank of Finchville; that the amount placed to the credit of the depositors of the Bank of Finchville on the books of the Deposit Bank on March 9, 1931, bore interest from that date after crediting the amount thereof by the purchase price of the assets taken over by the Deposit Bank without recourse; that the amount of time deposits should bear interest only to the amount specified in the deposit agreement and the balance of the deposits should bear interest at the rate of 6 per cent; that the Deposit Bank forthwith make settlement of its accounts before the master commissioner and that he as-

certain the amount and time of collection of the assets other than those purchased outright; and as collections were made he should credit the amount of each collection, principal and interest upon the amount advanced upon liabilities other than time deposits, and next credit amounts so collected to wipe out the obligations or liability for time deposits until the termination of the time for which the time deposits run; that after the termination of each time deposit the amount thereof would draw interest at 6 per cent the same as individual deposits; that unsold assets then on hand would be turned over in kind to the Bank of Finchville; that the plaintiffs recover their costs.

Pursuant to the order of reference, the commissioner filed his report showing the total amount realized from collection of assets, interest collected on assets, the liabilities assumed by the Deposit Bank which showed a balance of $9,572.68, charged against the Deposit Bank including the sum of $3,869.37 interest collected on assets. He charged against the above balance interest due the Deposit Bank on advance $1,532.21, expenses paid in connection with collection $2,145.20, expenses of audits, $211, attorney's fees of $100 and $300 and court costs of $63.35, or a total of $4,351.76, showing a balance due stockholders of $5,220.92. He set forth in detail the items making up the expenses paid in connection with collection and also the amount distributed to various stockholders of the Bank of Finchville.

The Deposit Bank filed exceptions to the report of the master commissioner because it disallowed the items of expenditure for which it should have been credited as shown by report prepared by Humphrey Robinson & Company, accountants, which items were set forth at length in the exceptions. Plaintiff filed exceptions to the report of the commissioner on the grounds (1) that the item of $3,869.37 interest collected on assets was not the full amount of interest collected on assets; (2) that the item of $1,532.21 interest allowed the Deposit Bank on deposits assumed to be paid was improper because it did not pay interest on deposits except a small amount paid on time deposits which was not separately stated but the amount of which was much less than $1,532.21 and the exact amount so paid was neither alleged, proved nor shown in the settlement and on the further ground that no amount was alleged or proved to be paid or charged to general depositors nor any loss suffered

by reason thereof; (3) that the item of $2,145.20 allowed the Deposit Bank for expenses paid in connection with collection was not a proper charge because all such expenses were under the contract to be paid by the Deposit Bank and same was not a proper credit in favor of it and they excepted to each of the items making up that sum; (4) that the item of $211 paid Humphrey Robinson & Company for making an audit was expense incurred by the Deposit Bank for its own benefit and was in nowise beneficial or chargeable to the Bank of Finchville; (5) that the sums of $100 and $300 paid to L. B. Kinsolving for attorney's fees were expended solely for the benefit of the Deposit Bank and were in no way beneficial or chargeable to plaintiffs but were services rendered in assertion of false and illegal claims against plaintiffs; that the services were rendered and the charges therefor reasonable but that they should not be paid out of the fund of the Bank of Finchville; (6) that the item of $63.35 court costs were not incurred in the interest of the Bank of Finchville; (7) that the item of $5,220.92 was not the balance due plaintiffs and other stockholders but for reasons set out in the exceptions and other reasons there was a much larger sum due the stockholders of the Bank of Finchville, the amount of which was not known but was approximately $10,000; (8) because the Deposit Bank was not charged for the amount of securities held by it and directed to be turned over in kind to stockholders of the Bank of Finchville.

The cause being submitted on exceptions of the parties to the report of the commissioner it was adjudged (1) that the report of items of expense allowed by the commissioner to the Deposit Bank be amended and supplemented to include attorneys' fees aggregating $205.72 pursuant to a stipulation of the parties; (2) that the item of $63.35 court costs allowed the Deposit Bank be amended by substituting for same the sum of $12.90, the latter sum being the amount of court costs in the action of J. W. Russell et al. v. Deposit Bank and the other was costs incurred in this action, and adjudged against defendants by previous judgment.

It was further recited that the Deposit Bank objected to so much of this order as refused the allowance for items of expense which are fully set forth; and excepted to the judgment of the court disallowing the interest on all assets taken over without recourse. The plaintiffs objected and excepted to so much of the order

as allowed $400 attorney's fees and $12.90 court costs in the Russell suit to be charged against the Bank of Finchville and to the item of $1,532.21 less $257.35 the amount stipulated by the parties to be deducted from said sum allowed as credit to the Bank of Finchville for interest on deposits advanced to pay creditors and depositors of the Bank of Finchville. Each of the parties objected and excepted to so much of the judgment as was adverse to them and prayed an appeal which was granted. Plaintiffs have appealed and upon motion defendants, the Deposit Bank, have been granted a cross appeal.

It is argued in substance by counsel for appellants that the court erred in allowing items of interest for money advanced to pay depositors because the contract did not provide for such interest and also because there was neither pleading nor proof to show when and in what amounts advancements were made for such purposes and therefore no basis for computing the interest and further that the judgment was erroneous in that it allowed the $400 attorneys' fee and the sum of $211 paid to an auditor for an audit of the accounts of the Bank of Finchville. Appellees, of course, claim that those credits were properly allowed it and further argues in effect that the Deposit Bank purchased the assets of the Bank of Finchville for the purpose of liquidation and was entitled to interest on all assets on and after March 7, 1931, and that the court erred in adjudging otherwise. Necessarily a proper determination of these questions depends upon the interpretation to be given the contract.

A primary and fundamental rule in the interpretation of a contract is to ascertain if possible the intention of the parties from its terms, taking into consideration the entire context of the agreement and to give to it such construction as will carry out that intention. Atkins v. Atkins' Adm'r, 203 Ky. 291, 262 S. W. 268; Jones v. Riddell, 224 Ky. 245, 5 S. W. (2d) 1077; White Star Coal Company v. Pursifull, 186 Ky. 697, 217 S. W. 1020. If the contract is so clear and free from ambiguity as to be self-interpretative no construction is necessary but it should stand as it is written and should be enforced according to its express terms in the absence of showing of fraud, mistake, or a plea and showing of grounds for reformation. Ex parte Walker's Ex'r, 253 Ky. 111, 68 S. W. (2d) 745; Hendrix Mill & Lumber Company v. Meador, 228 Ky. 844, 16 S. W. (2d) 482. In the light

of the foregoing fixed rules an examination of the entire context of the quoted agreement leaves no room for doubt concerning the correctness of the chancellor's finding that, with the exception of the assets taken outright and without recourse by the Deposit Bank, it took the assets of the Bank of Finchville over for the purpose of liquidation only and to all intents, purposes and effect stepped into the shoes of the banking commissioner for that purpose, waiving, however, proper charges that otherwise might have been made against the Bank of Finchville by agreeing to carry out the liquidation without cost or expense other than necessary court cost and attorney's fees. If the banking department had administered the affairs of the closed bank, the bank of course would have been entitled to all interest collected on assets; but if the liquidating agent had sold any of the assets outright to another bank the latter would have been entitled to the interest from the date of transfer. The reference in the contract to adjustment of interest related solely to securities taken by appellee without recourse and clearly meant that the Bank of Finchville would receive interest that had accrued up to the date of the transfer and appellees would receive the interest thereafter. It is true that in the preamble to the contract it is said that the Deposit Bank desired to purchase the assets of the Bank of Finchville and liquidate same, however, in the body of the agreement it is recited that the assets of the Bank of Finchville were turned over for the purpose of liquidation with the right to require double assessment against the stockholders of the former if same should be necessary to take care of expenses and loss incurred in the liquidation.

Courts are not authorized to construe contracts according to secret intentions or conceptions of any of the parties thereto but only by what they have said in their contracts. Harmount & Wolfe Tie Company v. Skinner, 232 Ky. 630, 24 S. W. (2d) 263. It is our conclusion that the court properly adjudged that the Bank of Finchville was entitled to all interest collected on its assets other than the interest accruing on assets taken over by the Deposit Bank without recourse after the transfer thereof. Unquestionably appellee was entitled to charge against the Bank of Finchville interest paid on time deposits but the contract does not expressly nor impliedly provide for interest on sums advanced by the Deposit Bank to pay general depositors of the Bank of Finch-

ville. Counsel for appellee cites authorities in an effort to sustain the contention that the Deposit Bank was entitled to such interest but most of those cases and authorities relate to advancements made by trustees, etc., to a cestui que trust or a ward. The rights of the parties in such cases of course are fixed by law but here it is a matter of contract between the parties. Since the contract made no provisions for interest on the money advanced to pay depositors on checking accounts but does expressly provide that the liquidation shall be made without cost or expense other than as above indicated, it is apparent that the chancellor erred in allowing credit for interest on deposits other than such as was actually paid on time deposits.

Controversy raised over items of attorney's fees, audits, court costs, etc., may properly be treated together. The item of $211 was for an audit made at the behest of appellee. Clearly it was unnecessary to a liquidation as contemplated in the contract of the parties. The contract contemplated that appellee would keep the accounts and make proper accounting without cost to the Bank of Finchville as provided in the contract. The item of attorney's fees in connection with the Russell suit was properly treated by the chancellor as costs of liquidation, but the instant case presents an entirely different situation. No reason is assigned why the chancellor refused to allow appellee credit for court costs in this action but did allow the attorney's fees paid in connection with it. Manifestly the same reason that would allow or disallow one would prevail as to the other. This was not a litigation to collect or to conserve assets taken over by appellee but was an action to require it to make settlement in accordance with the terms of its contract, and by defense interposed it was serving its own interests and not the interests of the stockholders and creditors of the Bank of Finchville. The chancellor properly adjudged that the costs of the action were not a proper charge against the Bank of Finchville but should be paid by appellee; and for reasons above assigned fees paid by appellee to attorneys for services in connection with this litigation were not a proper charge against the Bank of Finchville under the contract but should be borne by appellee.

Concerning the question of expenses allowed as credits to appellee we find that apparently, with the exception of one or two items too trivial in amount to be

given attention, all the items were proper charges against the Bank of Finchville in connection with the liquidation and as clearly contemplated by the terms of the contract. As to the items disallowed and for which appellee contends it was entitled to credit it appears from the record that these items were incurred for additional clerical hire necessitated by the increased business of appellee in connection with the liquidation and expenses charged by officers and employees of the bank for gasoline and use of their automobiles in calling on the creditors of the Bank of Finchville and looking after other matters connected with the liquidation. Since appellee agreed to handle the liquidation without any cost or expense to the Bank of Finchville other than whatever attorney's fees might be necessary and the necessary court costs, it is at once apparent that the court properly disallowed these items of expense.

It is most earnestly contended by counsel for appellee that the written contract is ambiguous and that when construed according to prevailing rules of construction in the light of the existing circumstances as revealed by evidence, the interpretation placed upon it by appellees should prevail; that the court should adopt the construction placed upon the contract by appellee and the banking commissioner which was in accord with the contention of appellee. One of the principal rules of construction where a contract is couched in ambiguous or doubtful terms is that it must be construed so as to effectuate the intention of the parties in the light of the proven facts and circumstances inducing and attending its execution and the situation of the contracting parties. Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941; Ex Parte Walker's Ex'r, supra, Peters v. Mullins, 211 Ky. 123, 277 S. W. 316.

Necessarily the directors of the Bank of Finchville wanted the bank liquidated with the least possible expense and manifestly the purpose of appellee in undertaking the liquidation was to secure the good will of the Bank of Finchville and its customers and thus increase its own business. Finchville is one of the best agricultural sections of Shelby county and its depositors were of a class to be desired as customers. It was naturally to be expected that many of the depositors would continue to do business with appellee after the liquidation. Attorneys for appellee were present when the contract was drafted and signed and if it had been intended that

it should embody matters for which they now contend, they certainly would have required that it so specify. Furthermore, appellee simultaneously with the execution of the quoted contract required the directors of the Bank of Finchville to enter into a contract with it whereby they agreed and bound themselves to save it harmless and free from any loss by reason of inability to collect double liability from any stockholder if an assessment for that purpose became necessary. That contract recited that the assets of the Bank of Finchville were turned over to the Deposit Bank for the purpose of liquidation. Different instruments relating to and constituting a part of the same transaction may be interpreted together in determining the intention of the parties. 12 Am. Jr. 781. It is a rule that when a contract is ambiguous evidence of contemporary interpretation of it by the parties is to be given great weight by courts in construing it. Hauk v. Jordan, 235 Ky. 388, 31 S. W. (2d) 624; City of Covington v. Union Light, Heat & Power Company, 243 Ky. 591, 49 S. W. (2d) 580. However, it must not be overlooked that this contract was made in the interest of both stockholders and creditors of the bank to be liquidated, and there is evidence that following its execution the Banking Commissioner in conversation with its directors placed upon it the construction contended for by appellants, although there is some evidence to the contrary. A controversy between appellants and representatives of the Bank of Finchville over involved questions of interest arose early in the course of the liquidation, and finally culminated in this litigation.

In Chesapeake & O. Railway Company v. Peed, 155 Ky. 696, 160 S. W. 472, Ann. Cas. 1915C, 460, it was held that contemporaneous construction of a contract between two common carriers was not binding in so far as it affected the rights of the public. By analogy at least that case is applicable here, and the court should not be controlled by the construction placed upon the contract by appellee and the Banking Commissioner where such construction is inimical to the rights of the stockholders and creditors of the Bank of Finchville and especially where, as in this instance, it is clearly not in harmony or accord with the terms of the contract. It follows therefore that if it were necessary to resort to aiding or collateral rules of construction, the same result would be attained.

Wherefore, the judgment is affirmed in part and reversed in part on appeal and is affirmed on cross appeal with directions to enter judgment in conformity with this opinion.